UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ORLEANS INTERNATIONAL INC.,

        Plaintiff,

v.

ALTERNA CAPITAL SOLUTIONS,
et al.,

        Defendants.

Case No. 2:21-cv-11335

HONORABLE STEPHEN J. MURPHY, III

_____/

**OPINION AND ORDER
GRANTING MOTION TO DISMISS [16]
AND CONDITIONALLY GRANTING MOTION TO AMEND [20]**

Defendants removed the present diversity case from Oakland County Circuit Court. ECF 1. Plaintiff Orleans International later amended the complaint. ECF 10. Defendants Thomas Revier and Paul Hillen then moved under Federal Rule of Civil Procedure 12(b)(2) to dismiss the amended complaint. ECF 16. After the parties briefed the motion to dismiss, Plaintiff moved for leave to file a second amended complaint. ECF 20. Nearly a year after the briefing, the present case was reassigned to the Court. *See* 22-AO-036. For the following reasons, the Court will grant the motion to dismiss and conditionally grant the motion for leave to amend.

1

## BACKGROUND[1]

Plaintiff Orleans International is a Michigan Corporation. ECF 10, PgID 249. Defendant Revier, a Minnesota resident, is the president and Chief Executive Officer of Revier Brand Group ("RBG"), a Minnesota limited liability company. ECF 16-2, PgID 641. Defendant Hillen, also a Minnesota resident, is the Senior Vice President and Chief Operating Officer of RBG. ECF 16-3, PgID 661.

Plaintiff is an importer and wholesaler of meat products. ECF 10, PgID 250. RBG procures cattle for processing. ECF 16-2, PgID 642; ECF 16-3, PgID 662. RBG hired Plaintiff to assist and facilitate the fulfilling of its beef sales. ECF 10, PgID 250. Under the agreement, Plaintiff would pay Republic (a non-party partner of RBG) for product before sending the product to the end customer. *Id.* Plaintiff would then invoice and collect payment from the end customer; the arrangement "provided RBG/Republic with prompt payment for the products sold." *Id.* Eventually, RBG contracted with Defendant Alterna to take on all RBG's receivables. *Id.* at 252.

RBG later generated invoices for product that Plaintiff had paid Republic for, and RBG sent those invoices to two end customers: U.S. Foods (a Delaware and Illinois corporation) and SuperValu/UNFI (a Delaware and Minnesota corporation). *Id.* at 253; ECF 16-2, PgID 642–43; ECF 16-3, PgID 662–63. In doing so, RBG invoiced both Plaintiff and the end customers for the same product, even though Defendant

---

[1] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding or proof of any fact.

Hillen emailed an RBG employee that the U.S. Foods shipment "should be billed to [Plaintiff]" because Plaintiff was invoicing U.S. Foods. ECF 10, PgID 254.

Both U.S. Foods and SuperValu/UNFI withheld payment to Plaintiff because each had received invoices from both Plaintiff and RBG for the same product. *Id.* at 254. Plaintiff then requested that RBG withdraw the invalid invoices, but RBG refused. *Id.*

Plaintiff later sued Revier and Hillen for tortious interference with a business relationship and civil conspiracy. *Id.* at 256–59. The basis for the claims were that Revier and Hillen tortiously interfered with Plaintiff's business relationships with U.S. Foods and SuperValu/UNFI by sending invalid invoices to those two corporations. *Id.* at 254, 256–59.

**LEGAL STANDARD**

I.  Motion to Dismiss

When a defendant moves to dismiss for lack of personal jurisdiction "the plaintiff always bears the burden of establishing that jurisdiction exists." *Serras v. First Tenn. Bank Nat'l Assoc.*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citations omitted). The Court may decide the motion based on "affidavits alone," may permit discovery before deciding the motion, or "may conduct an evidentiary hearing." *Id.* (citation omitted). If the Court resolves the motion "on written submissions alone," and the defendant submits affidavits to combat a finding of personal jurisdiction, the plaintiff must assert specific facts that show jurisdiction. *Id.* (citation omitted). The Court

considers all written submissions, including pleadings and affidavits, "in the light most favorable to the plaintiff." *Id.* (citation omitted).

When sitting in diversity, a federal court's exercise of personal jurisdiction over a non-resident defendant "must be both (1) authorized by the law of the [S]tate in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (quotation omitted).

Federal precedent distinguishes between "general or all-purpose jurisdiction" and "specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984)). A court may exercise general jurisdiction over a corporation when the corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)); *see also Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State." *Goodyear*, 564 U.S. at 919 (internal marks and internal quotation omitted).

II. <u>Motion for Leave to Amend</u>

Civil Rule 15(a)(2) provides that after a responsive pleading is filed, a party may only amend the pleading with the written consent of the opposing party or with leave of the Court. The rule also provides that "[t]he [C]ourt should freely give leave

4

when justice so requires." *Id.*; *see Foman v. Davis*, 371 U.S. 178, 182 (1962). To determine whether to grant leave to amend a pleading, the Court relies on six factors: (1) "undue delay in filing"; (2) "lack of notice to the opposing party"; (3) "bad faith by the moving party"; (4) "repeated failure to cure deficiencies by previous amendments"; (5) "undue prejudice to the opposing party"; and (6) "futility of [the] amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (quotation omitted).

## DISCUSSION

The Court will first resolve the Rule 12(b)(2) motion to dismiss. After, the Court will resolve the motion for leave to amend.

I. Motion to Dismiss

Revier and Hillen argued only that the Due Process Clause prohibits the Court from exercising specific personal jurisdiction over them.[2] ECF 16, PgID 629–30. Ordinarily, "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation," *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 698 (6th Cir. 2000) (quotation omitted). But even if an officer's actions are in "official rather than personal capacity," the Court may still exercise personal jurisdiction over the officer so long as specific jurisdiction exists. *Id.* Specific jurisdiction is proper when: (1) a party purposefully avails itself "of the privilege of acting in the forum [S]tate or causing a consequence in the forum [S]tate";

---

[2] Because Revier and Hillen are not Michigan residents, ECF 10, PgID 249, no party argued that the Court has general personal jurisdiction over them.

5

(2) the cause of action arises from the party's activities in the forum State; and (3) the party's actions, or the consequences caused by the party's actions, created a "substantial enough connection" between the party and the forum State "to make the exercise of jurisdiction . . . reasonable." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549–50 (6th Cir. 2016) (quotation omitted). The Court will consider each factor in turn.

### A. *Purposeful Availment*

"'Purposeful availment' . . . is present where the defendant's contacts with the forum [S]tate 'proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum [S]tate.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475 (citations omitted).

Plaintiff cited an affidavit from its Director of Domestic Trade, ECF 18-5, to show that Revier and Hillen purposely availed themselves of Michigan's laws. ECF 18, PgID 690–91. The affidavit explained that Revier and Hillen, as RBG's agents, knew about Plaintiff invoicing end customers and that RBG provided Plaintiff with customer information. ECF 18-5, PgID 752. Plaintiff also concluded that Revier and Hillen had sent invoices to SuperValu/UNFI and U.S. Foods "for the purpose of

6

collecting payments that belonged to [Plaintiff]," and thus, "their actions caused a consequence in Michigan." ECF 18, PgID 692 (emphasis omitted).

But the affidavit explained that the only business relationship with Plaintiff was with RBG—not Revier or Hillen. ECF 18-5, PgID 751. Even if the affidavit were to establish a business relationship between Plaintiff and Revier and Hillen, "an individual's contract with an out-of-[S]tate party alone" cannot "automatically establish minimum contacts." *Burger King*, 471 U.S. at 478 (emphasis omitted). To that end, all Plaintiff has shown is that Revier and Hillen, as agents of RBG, sometimes conducted business with Plaintiff. *See* ECF 10, PgID 252; ECF 10-8, PgID 411; ECF 18-5, PgID 752. That fact alone cannot establish that either purposely availed themselves of Michigan law.

Purposeful availment requires that a defendant create "continuous and substantial consequences" in the forum State. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (quotation marks and quotation omitted). For example, an out-of-State defendant that emails a Michigan company about a deal for a product that is not sent to Michigan and that does not solicit sales in Michigan is not enough to purposefully avail the out-of-State defendant of Michigan's laws. *EnvisionTEC, Inc., v. Stax3d, Inc.*, No. 19-13564, 2020 WL 6867711, at *4 (E.D. Mich. Nov. 23, 2020).

Plaintiff's efforts to justify specific personal jurisdiction over Revier and Hillen rest on even more attenuated contact. The emails from Revier and Hillen do not show whether either knew Plaintiff was a Michigan corporation. *See generally* ECF 10-1; ECF 18-5. And the emails about the U.S. Foods and SuperValu/UNFI deals, ECF 10-

7

8, PgID 411; ECF 18-5, PgID 760–88, do not pertain to deals that shipped and delivered products to Michigan, but to deals in which products, as well as invoices, were sent to States other than Michigan, ECF 16-2, PgID 643; ECF 16-3, PgID 663. The emails also failed to show that Revier and Hillen discussed a product shipment to Michigan or solicited sales in Michigan. ECF 10-8, PgID 411; ECF 18-5, PgID 760–88. As a result, Plaintiff has "not made a prima facie showing of any communications which indicate that" Revier or Hillen "sought to create 'continuous and substantial' consequences in Michigan." *EnvisionTEC, Inc.*, 2020 WL 6867711, at *4; *see also Kerry Steel, Inc., v. Paragon Indus.*, 106 F.3d 147, 151 (6th Cir. 1997) (holding that specific personal jurisdiction did not exist when a plaintiff "alleged no facts connecting either the subject matter of the contract or its performance to . . . Michigan").

In contrast, an out-of-State defendant will purposefully avail itself of Michigan intentional tort law when it sends fraudulent communications to a Michigan company. *Needa Parts Mfg. v. PSNet, Inc.*, 635 F. Supp. 2d 642, 650 (E.D. Mich. 2009). But the invoices from Revier and Hillen that support the tortious interference with a business relationship and civil conspiracy claims were sent to *Illinois* and *Minnesota* corporations. ECF 16-2, PgID 643; ECF 16-3, PgID 663. It follows that the invoices from Revier and Hillen do not establish that Revier or Hillen purposefully availed themselves of Michigan's laws.

In all, Plaintiff has shown no evidence that Revier and Hillen intended to purposely avail themselves of Michigan law. Their only communications with a

Michigan corporation occurred because Plaintiff decided to be headquartered in Michigan—not because Revier or Hillen sought to create continuous and substantial consequences in the State. *See Calphalon Corp.*, 228 F.3d at 723 (holding that an out-of-State defendant's contact with an Ohio company occurred only because the company "chose to be headquartered in Ohio," so the out-of-State defendant did not purposely avail themselves of Ohio's laws). Thus, Revier's and Hillen's contacts with Michigan "were precisely the type of random, fortuitous, and attenuated contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction." *Id.* (quotation marks omitted).

### B. The Cause of Action Arises from Defendants' Activities in the Forum State

For the second prong, "[o]nly when the operative facts of the controversy are not related to the defendant's contact with the [S]tate can it be said that the cause of action does not arise from that contract." *Calphalon Corp.*, 228 F.3d at 723–24 (quotation omitted). Plaintiff has failed to establish that the claims against Revier and Hillen arise from their activities in Michigan.

As discussed earlier, the claims against Revier and Hillen hinge on allegedly invalid invoices to U.S. Foods (an Illinois and Delaware corporation) and to SuperValu/UNFI (a Minnesota and Delaware corporation). ECF 16-2, PgID 643; ECF 16-3, PgID 663. And there is an email from Hillen, sent while he was in Minnesota, that suggests he was aware the U.S. Foods invoice should have been directed to Plaintiff instead. ECF 10-8, PgID 411; ECF 16-3, PgID 664.

9

At bottom, the facts alleged only that Hillen, while in Minnesota, had sent invalid invoices to Illinois and Minnesota corporations. No activity from Revier or Hillen that underlie Plaintiff's causes of actions therefore occurred in Michigan. Although their conduct caused a loss to Plaintiff in Michigan, "[t]he proper question is not where the plaintiff experienced a particular injury or effect[,] but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). "[T]he mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 291. Because Plaintiff's injury in Michigan is the only fact that connects Revier or Hillen to the state, the facts supporting Plaintiff's claims are unrelated to Revier's or Hillen's contacts in Michigan. Plaintiff's claims therefore do not "arise from" their activities in Michigan. *AlixPartners,* 836 F.3d at 549 (quotation omitted).

### C. *Substantial Enough Connection to Make the Exercise of Jurisdiction Reasonable*

The last prong looks at "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285 (citing *Int'l Shoe Co.*, 326 U.S. at 285). In some cases, "entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum [S]tate" may show a substantial connection with the forum State. *Id.* (quoting *Burger King*, 471 U.S. at 285).

But Plaintiff has alleged no facts that show Revier or Hillen were in a contractual relationship that envisioned continuing and wide-reaching contacts in

Michigan. *See generally* ECF 10. At most, Plaintiff has shown that it had a business relationship with RBG. *Id.* Yet the business relationship had nothing to do with whether Revier and Hillen wanted to create continuing and wide-reaching contacts in Michigan. ECF 10, PgID 250–51. In fact, the business relationships were between RBG and Illinois and Minnesota corporations. ECF 16-2, PgID 642–43; ECF 16-3, PgID 662–63. Those relationships therefore cut against finding a substantial connection between Defendants and Michigan.

Still, Plaintiff contended that because Revier and Hillen created a consequence in Michigan—the loss of revenue to Plaintiff—both have a substantial connection to Michigan. ECF 18, PgID 692. And when a tort's consequences do create a substantial connection to the forum State, the forum State must be both "the focal point" of the conduct and the harm suffered. *Calder v. Jones*, 465 U.S. 783, 789 (1984). But Michigan was not the focal point of the invoices; the invoices were sent from Minnesota to Illinois and Minnesota. ECF 16-3, PgID 664. Besides, "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290. Plaintiff has thus failed to establish that the consequences of Revier's and Hillen's acts "have a substantial enough connection with the forum [S]tate to make the exercise of jurisdiction over the defendant reasonable." *AlixPartners,* 836 F.3d at 549–50 (quotation omitted).

Because Plaintiff has failed to satisfy the three specific personal jurisdiction prongs, the Court will grant Revier and Hillen's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

11

II.    <u>Motion for Leave to Amend</u>

When considering a Rule 15(a)(2) motion for leave to amend the complaint "[t]he [C]ourt should freely give leave when justice so requires." Defendants objected that the Court should deny leave because the proposed second amended complaint did not address the personal jurisdiction defects. ECF 21, PgID 823; ECF 22, PgID 826. Because the Court has already addressed those objections by dismissing Revier and Hillen, the Court will grant Plaintiff leave to amend the complaint on one condition: the amendments may not add Revier and Hillen as Defendants. Granting leave to amend is proper because the Court has not sanctioned discovery yet and because justice so requires.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion to dismiss [16] is **GRANTED**. Defendants Revier and Hillen are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion for leave to amend [20] is **CONDITIONALLY GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff may **FILE** a second amended complaint on the condition stated above **no later than July 29, 2022**. The remaining Defendants must **ANSWER** the complaint **no later than twenty-one days** after Plaintiff files the second amended complaint.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 18, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 18, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager
